**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF
IOWA CENTRAL DIVISION**

| | |
|---|---|
| KEVIN GURLEY, <br><br> PLAINTIFF, <br><br> vs. <br><br> PERFORMANT RECOVERY, INC., <br><br> DEFENDANT. | **Civil Action No.** <br> 4:13-cv-00178 <br><br> **COMPLAINT and DEMAND FOR JURY TRIAL** |

NOW COMES the Plaintiff, Kevin Gurley ("Plaintiff" or "Gurley") by and through his attorney, L. Ashley Zubal, and for his Complaint against the Defendant, Performant Recovery, Inc. (hereinafter "Defendant" or "Performant"), alleges as follows:

## I.    INTRODUCTION

1. This is an action for damages brought by an individual consumer for Defendant's violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq, (hereinafter "FDCPA") and the Iowa Debt Collection Practices Act, § 537.7103, et seq, (hereinafter "IDCPA") which prohibit debt collectors from engaging in abusive, deceptive, and unfair collection practices.

## II.    JURISDICTION AND VENUE

2. Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d), 28 U.S.C. § 1331, and supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367. Venue in this District is proper in that the Defendant transacts business in Iowa and the conduct complained of occurred here.

1

### III.   PARTIES

3.  Plaintiff, Kevin Gurley, is a natural person residing in Polk County, Iowa.

4.  Defendant, Performant, is a business principally located in California who is engaged in the collection of debts owed to another in the State of Iowa.

5.  Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3). Plaintiff is a "debtor" as that term is defined by Iowa Code § 537.7102(6).

6.  Defendant is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and Iowa Code § 537.7102(5).

### IV.   FACTUAL ALLEGATIONS

7.  At some point in time, the Plaintiff incurred a financial obligation to the US Department of Education that was primarily for personal, family or household purposes, that allegedly went into default for late payment, and is therefore an alleged "debt" as that term is defined by 15 U.S.C. § 1692a(5) and Iowa Code § 537.7102(3).

8.  Sometime thereafter, the debt was sold, assigned, or otherwise transferred to the Defendant for collection, when thereafter the Plaintiff began receiving collection communications from the Defendant in an attempt to collect this debt.

9.  The Plaintiff began receiving collection correspondence from the Defendant sometime in December, 2012.

#### *Telephone Communication on December 26, 2012*

10. On or about December 26, 2012, the Plaintiff received a collection call from a female representative of the Defendant named Wanda James who was calling in an attempt to collect a debt. Ms. James advised the Plaintiff his student loans were

2

in default. She further advised a tax offset was due to occur on the Plaintiff's 2012 refund and that the Defendant could assist the Plaintiff to get his student loan payments back on track. The Plaintiff advised he could not receive calls at work and that his cell phone was his work phone. Wanda became rude and asked why the Plaintiff was answering his phone at work. Wanda advised the Plaintiff to take down her information and call her back or the Defendant would move forward with the tax offset.

11. The Plaintiff is a professional coordinator for a 24 hour monitoring facility that assists individuals who have mental illness or injury. As such, he is on call and must be available to answer his cell phone at all times.

12. The Plaintiff called the Defendant later that day and requested the complaint department to seek a different representative other than Ms. James. The Plaintiff was put on hold for an excess of five minutes and was required to leave a voice message.

### *Telephone Communication on February 14, 2013*

13. The Plaintiff did not hear from the Defendant during January, 2013. After receiving additional collection correspondence from the Defendant advising he may be subject to a tax offset or wage garnishment, the Plaintiff placed a call to the Defendant on or about February 14, 2013.

14. The Defendant spoke with Representative Max Stone who advised he would be handling the Plaintiff's account. Mr. Stone advised the Plaintiff he had three options with reference to his student loan default. First was to pay the amount in full. Second, the Plaintiff may enter into a 9 month rehabilitation payment. Mr. Stone did not mention a third option. Specifically, Mr. Stone failed to advise the

Plaintiff of his right to consolidate his student loans which would also bring the student loans into good standing.

15. The Plaintiff's primary concern was with regard to the possibility that his tax refund may be offset. The Plaintiff voiced these concerns to Mr. Stone. Mr. Stone offered to assist the Plaintiff and further advised that he had the ability to remove the Plaintiff from the tax offset list. Mr. Stone confirmed the Plaintiff's address and advised he would be forwarding hardship paperwork in the mail to the Plaintiff. Mr. Stone explained the Plaintiff would need to fill out and send in along with necessary documents in order to move forward with negotiating an affordable monthly payment.

### *Telephone Communication on February 21, 2013*

16. On or about February 21, 2013, the Plaintiff contacted Mr. Stone to inquire about the hardship paperwork and why he had not received same in the mail. Mr. Stone stated the paperwork was mailed on February 15, 2013 and to contact him once received.

17. The hardship paperwork was received by the Plaintiff and forwarded back to the Defendant along with the necessary documentation on February 21, 2013.

### *Telephone Communication on March 04, 2013*

18. On or about March 04, 2013, Mr. Stone called the Plaintiff. Mr. Stone confirmed receipt of the hardship paperwork. He went on to state the Defendant would be able to accept a nine month rehabilitation payment of $50.00. The Plaintiff provided his account information and arranged for $50.00 payment to begin withdrawing from his account on the 7th of every month.

4

### *Telephone Communication on March 11, 2013*

19. On or about March 11, 2013, Mr. Stone called the Plaintiff's spouse, Jennifer

Gurley's (Jenn), cell phone and she answered. Mr. Stone confirmed his agreement

with Kevin that $50.00 payments would begin on the 7th of each month.

20. Jenn requested if the payment could be lowered to $25.00 each month and

also requested the withdrawal date be moved to the 20th of each month due to pay

cycles.

21. Mr. Stone stated he would place an account inquiry to have the payment

lowered and would contact the Plaintiff as soon as he had additional information.

### *Telephone Communication on March 11, 2013*

22. The Plaintiff called Mr. Stone later on March 11, 2013. Mr. Stone indicated

the he placed an account inquiry to see about getting the monthly payment

lowered to $25.00.

23. The Plaintiff explained that was fine but that his biggest concern was the tax

offset. The Plaintiff requested a status as to that issue and whether he was taken off

of the tax offset list.

24. Mr. Stone replied: "I think you already are. I think I just took you off over

the weekend cuz you entered into this."

25. In response to the Plaintiff's inquiry on whether he was required to do

anything further, Mr. Stone replied:

> Nope, nope you don't have to do anything. Ok, you entered into an
> arrangement with us it stops all direct collection activity, it stops the tax
> offset. The only thing it doesn't stop is the default letters coming to you
> because technically you are still in default until you reach the end of the 9
> months... As far as the tax offset, I've already handled that.

26. Mr. Stone ended the conversation by stating again that he was working on getting the payment lowered to $25.00 per month and would contact the Plaintiff when he had more information.

27. The $50.00 payment which was agreed upon between the Plaintiff and Mr. Stone to occur on March 07, 2013 was actually withdrawn from the Plaintiff's account on March 11, 2013.

### Telephone Communication on March 15, 2013

28. Mr. Stone contacted the Plaintiff's spouse, Jenn, on March 15, 2013. He informed Jenn that he was able to successfully lower the monthly payment to $25.00. He further stated however that Kevin would need to call him back to approve the monthly bank withdrawal.

29. The Plaintiff called Mr. Stone back later on March 15, 2013 and left a voice message.

### Telephone Communication on March 18, 2013

30. Jenn Gurley called Mr. Stone back on March 18, 2013 as she and her husband had not heard back. She confirmed the Plaintiff's social security and account information.

31. Jenn and Mr. Stone confirmed the rehabilitation payment would be changed from $50.00 to $25.00. A reoccurring checking account withdraw was to begin April 20, 2013 and continuing on the same date each month thereafter.

32. Mr. Stone also advised he would cancel the original agreement with payments at $50.00 per month.

33. Mr. Stone explained the rehabilitation plan would be set up for 12 months. That would allow the Plaintiff to miss a payment which would not cause the Plaintiff to default on the program.

34. Mr. Stone confirmed the credit card information with Jenn and repeated that payments would be at $25.00 per month, to be withdrawn on the 20th of each month and would begin in April, 2013.

35. Jenn confirmed and the call ended.

### Telephone Communication on March 19, 2013

36. On or about March 19, 2013, Jenn Gurley contacted the US Department of Education for the purpose of determining the status of the tax return and possible offset.

37. Jenn spoke with a representative who confirmed that the tax refund had been offset and applied to the Plaintiff's student loan debt.

### Telephone Communication on March 22, 2013

38. On or about March 22, 2013, Jenn Gurley called the Defendant and spoke with Mr. Stone. She was calling to inquire as to why they had not yet received paperwork regarding the new payment arrangement.

39. Mr. Stone explained that correspondence was mailed out on March 19, 2013. Mr. Stone confirmed the Plaintiff's mailing address and advised they should be receiving the payment arrangement agreement shortly thereafter.

### Correspondence Dated March 19, 2013

40. The Plaintiff received correspondence from the Defendant dated March 19, 2012. Said correspondence set forth the payment arrangement between the Plaintiff and Defendant.

41. The correspondence contained several errors. First, the agreement indicated the first payment to be March 20, 2013 in the amount of $25.00. The parties agreed to have the payments begin on April 20, 2013 rather than March 20, 2013.

42. Second, the agreement went on to indicate the subsequent reoccurring monthly payments of $25.00 to be withdrawn on the 25th of each month. The parties verbally agreed all payments would be withdrawn on the 20th of each month.

43. Finally, the agreement failed to account for the $50.00 March 11, 2013 withdrawn from the Plaintiff's account. The Defendant failed to credit the payment back to the checking account or in the alternative failed to apply the $50.00 to the 9 month rehabilitation payment.

### *Telephone Communication on March 29, 2013*

44. On or about March 29, 2013, Jenn Gurley called the Defendant and spoke with Mr. Stone. Jenn explained she was calling in regard to several discrepancies as laid out in the March 19, 2013 payment agreement correspondence.

45. Jenn went on to advise Mr. Stone of the discrepancies of the agreed terms of payment during their March 18, 2013 telephone conversation and the errors contained in the March 19, 2013 correspondence.

46. Jenn again clarified with Mr. Stone that the agreed upon monthly payment would be $25.00 to begin in April 20, 2013 not March 20, 2013 and subsequent $25.00 payments were to be withdrawn on the 20th of each month, rather than the 25th of each subsequent month.

47. Mr. Stone indicated he would revise the agreement to those terms.

8

48. Jenn requested Mr. Stone forward a new agreement setting forth the correct payment arrangement and also requested some explanation as to how the initial payment of $50.00, withdrawn on March 11, 2013, would be applied.

49. Mr. Stone agreed that he would place a new payment agreement with the correct terms in the mail to the Plaintiff.

50. As of April 19, 2013, the Plaintiff has not received a corrected payment arrangement from the Defendant.

### *April, 2013 Billing Correspondence*

51. The Plaintiff received billing correspondence from the Defendant on April 16, 2013. Said correspondence incorrectly indicated the first $25.00 payment to be due on April, 25, 2013.

### *Damages*

52. The Plaintiff made clear to the Defendant's representative, Max Stone, that his agreement to enter into a 9 month rehabilitation repayment was contingent upon him being removed from debtors subject to a tax offset. Mr. Stone made multiple representations that he would have the Plaintiff removed from the offset list and indicated he had "taken care of it" in subsequent communications.

53. The Plaintiff relied on the representations of Mr. Stone. Based on the representations he made arrangements to make certain payments with the 2012 tax refund proceeds only to find out that the refund was intercepted to offset his student loan obligation.

54. After several miscommunications between the Plaintiff, the Plaintiff's spouse, and the Defendant, the Plaintiff and his spouse were forced to engage in

communications with the Defendant for a period of two months in attempting to mitigate the errors caused by the Defendant.

55. The Plaintiff continues to be damaged as the Defendant has breached the terms of the agreement between the parties. Further, the continued misapplication of payment terms by the Defendant places the Plaintiff at risk of being unable to make the necessary 9 month rehabilitation payment and therefore would cause his student loans to be in default once again.

56. As a result of the multiple misrepresentations by the Defendant in an attempt to collect a debt, the Plaintiff suffered emotional distress, including but not limited to stress, anger, frustration, confusion, loss of sleep, headaches, conflict among family, and loss of concentration at work.

### *Respondeat Superior Liability*

57. The acts and omissions of the Defendant and its representatives employed as agents by Defendant who communicated with Plaintiff as more further described herein, were committee within the time and space limits of their agency relationship with their principal, Performant.

58. The acts and omissions by Defendant and its representative were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by Defendant in collecting consumer debts.

59. By committing these acts and omissions against the Plaintiff, Performant and its representatives were motivated to benefit their principal, Performant.

60. The Defendant is therefore liable to the Plaintiff through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors, and omissions done in violation of state and federal law by the Defendant and its collection

employees, including but not limited to violations of the FDCPA, in their attempts to collect this debt from the Plaintiff.

## V.    FIRST CLAIM FOR RELIEF: VIOLATION OF THE FEDERAL FAIR DEBT COLLECTION PRACTICES ACT (FDCPA)

61. The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

62. CKS, and its agents, through the foregoing intentional and negligent acts and omissions, violated numerous and multiple provisions of the FDCPA including, but not limited to 15 U.S.C. §§ 1692e(2)(A), 1692e(10), 1692f, amongst others.

63. As a result of each and every Defendant's violations of the FDCPA, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from the Defendant herein.

**WHEREFORE,** Plaintiff prays that judgment be entered against the Defendant:

## COUNT I.
## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. § 1692 et seq.

• For an award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against the Defendant and for Plaintiff;

• For an award of statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A) against the Defendant and for Plaintiff;

11

- For an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) against the Defendant and for Plaintiff; and

- For such other and further relief as may be just and proper.

## VI.   SECOND CLAIM FOR RELIEF: VIOLATION OF THE IOWA DEBT COLLECTION PRACTICES ACT (IDCPA)

64. The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

65. CKS, and its agents, through the foregoing intentional and negligent acts and omissions, violated numerous and multiple provisions of the IDCPA including, but not limited to, each and every one of the above-cited provisions of the IDCPA, Iowa Code § 537.7103 et seq. This call on this occasion from Defendant was a collection communication in violation of numerous and multiple provisions of the IDCPA, including but not limited to Iowa Code §§ 537.7103(1)(f), 537.7103(2), 537.7103(2)(b), 537.7103(4), and 537.7103(4)(b), amongst others.

66. As a result of each and every Defendant's violations of the IDCPA, Plaintiff is entitled to actual damages pursuant to § 537.5201(1)(y); statutory damages in an amount up to $1,000.00 pursuant to § 537.5201(1)(y); and, reasonable attorney's fees and costs pursuant to § 537.5201(8) from the Defendant herein.

**WHEREFORE,** Plaintiff prays that judgment be entered against the Defendant:

## COUNT II.
## VIOLATIONS OF THE IOWA DEBT COLLECTION PRACTICES ACT
### Iowa Code § 537.7103 et seq.

12

- For an award of actual damages pursuant to § 537.5201(1)(y)against the Defendant and for Plaintiff;

- For an award of statutory damages of $1,000.00 pursuant to § 537.5201(1)(y) against the Defendant and for Plaintiff;

- For an award of costs of litigation and reasonable attorney's fees pursuant to § 537.5201(8) against the Defendant and for Plaintiff; and

- For such other and further relief as may be just and proper.

## VII.   JURY DEMAND

The Plaintiff respectfully requests a trial by jury.

Respectfully submitted,


__/s/ L. Ashley Zubal__
L. Ashley Zubal IS9998256
Marks Law Firm, P.C.
4225 University Avenue
Des Moines, IA 50311
(515) 276-7211
(515) 276-6280
ATTORNEY FOR PLAINTIFF

13